UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD IVORY,

                     Petitioner,               Case Number 2:13-cv-14717
                                                           Honorable Arthur J. Tarnow

v.

KENNETH ROMANOWSKI,

                     Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, GRANTING A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

Petitioner Bernard Ivory has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a bench trial in the Wayne Circuit Court of two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and one count each of possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. As a result of his convictions, Petitioner is serving concurrent terms of 18 years and 8 month-to-25 years for the assault convictions, 2-to-5 years for the felon in possession conviction, and a consecutive two-year term for the felony-firearm conviction. The petition raises two claims: 1) the state courts erred in failing to remand Petitioner's case for an evidentiary hearing on

his ineffective assistance of counsel claim, and 2) Petitioner was denied the effective assistance of trial counsel. The Court will deny the petition because the claims are without merit. The Court will, however, grant Petitioner a certificate of appealability and grant Petitioner permission to proceed on appeal in forma pauperis.

## I. Background

At Petitioner's bench trial, Kassem Bazzi testified that he owned a home on Ashton Avenue in Detroit that he had rented to Theresa McCoy. The difficulties that eventually gave rise to the shooting began in the early afternoon of October 27, 2009, when Kassem went to the house to evict McCoy. Kassem had not initiated any legal eviction proceedings, but explained at trial that "it was just between me and Ms. McCoy."

Kassem arrived at the house to evict McCoy with two relatives, Ahmad Bazzi and Ali Bazzi. The people at the house, McCoy, her boyfriend Toryanno Griffin, and her friend Cherrell Landsfair, were upset. Griffin testified during the defense case that Ali kicked the door in, knocking over McCoy's daughter. Landsfair then slapped Ali. The police were called, and when they arrived they told the Bazzis to leave the area, and they told McCoy to vacate the rental by 8:00 p.m.

The scene was thus set for a showdown that evening. Kassem arrived alone first in his car. He instructed several family members to meet him at the house. A few minutes later, another vehicle containing Sarah Jabr, Ali Bazzi, and Ahmad Bazzi,

2

arrived. A third car containing Mohamed Bazzi and Ahmed Bazzi arrived last. Ahmed Bazzi was armed with a handgun.

According to the Bazzis, they were planning to wait in their vehicles until the house was vacated, and then they planned to change the locks on the door and leave. For a time, things remained relatively peaceful as the Bazzis waited in the their cars while furniture was being moved out of the house.

Sarah Jabr testified that during this period of time she saw a man she later identify as Petitioner staring at the vehicles as he paced near the house. Petitioner lived in another house on Ashton with Landsfair, and the two were friends with McCoy and Griffin. Eventually, Petitioner came over to Jabr's vehicle and asked them if they had a problem. According to Jabr, Ahmed Bazzi replied that there was no problem and they were waiting for McCoy to finish moving out so they could change the locks. A few minutes later, Petitioner returned to the car and asked if anyone had a gun, and Jabr replied that they were not armed. Some of the the Bazzis noticed another man, later identified simply as D.P., also standing nearby.

That is when Jabr and other Bazzis testified that Landsfair came running from another house, yelling. Jabr got out of the vehicle to confront Landsfair. Some testimony suggested that Jabr was upset at Landsfair for slapping her boyfriend Ali earlier in the day, and she was desirous of the confrontation. In any event, Landsfair produced a knife and started stabbing Jabr, who fell to the ground. Ali Bazzi exited

the vehicle and started to pull Landsfair off, who continued to stab Jabr. The other Bazzis attempted to assist, and according to Mohammed Bazzi, it might have appeared that they were all ganging up on Landsfair. As a result, Petitioner intervened and tried to push the Bazzis off Landsfair. Eventually, Ali was able to separate the two women.

Then matters escalated. Several of the Bazzis testified that they saw Petitioner and the other man, D.P., draw handguns and start shooting in their direction. Jabr, Kassem, Mohamed, and Ahmad, all identified Petitioner as one of the shooters. Jabr testified that D.P. also participated in the shooting. Ahmed and Mohamed Bazzi exited their vehicle, Ahmed drew his handgun, and he fired back.

Ahmed was shot in the arm and dropped his gun. Mohammed was shot in the chest. The remaining Bazzis helped load their wounded into cars and rushed them to the hospital. Only Kassem Bazzi remained at the scene. He testified that he felt no need to intervene because "it wasn't [his] problem to begin with." T 8/10, p. 149. Petitioner, D.P., and Landsfair all fled. McCoy and Griffin stayed and finished moving their belongings out of the house.

The defense case presented a different narrative. Griffin testified that the Bazzis left after the police ordered them to around noon, but returned at 2:00 p.m. or 3:00 p.m. and waited outside. Griffin estimated that Petitioner came at 6:00 p.m. to help. Griffin said that the Bazzis had been yelling out of the vehicles to see if McCoy was done moving, so Griffin, Petitioner, and D.P. went to talk to them. During this

4

conversation, Petitioner told the Bazzis that he would have Landsfair apologize for slapping Ali, and then he called her.

According to Griffin, when Landsfair came down the street from her home, she was not screaming or acting aggressively. Nevertheless, the Bazzis exited their cars and Sarah started fighting with her. Next, Griffin saw one of the Bazzis hit Petitioner in the head with a gun. Petitioner fell, and then Griffin heard gunshots, but he could not see the shooter. Everyone dispersed. Griffin testified that neither he, D.P., nor Petitioner had a gun.

Petitioner testified in his own defense. Petitioner explained that Griffin "didn't tell the whole truth" on the witness stand. Petitioner explained that Griffin had called him about the Bazzis several times on October 27. Petitioner initially advised Griffin to call the police because Kassem did not have an eviction notice. Later, Griffin called at about 5:00 p.m., asking for help with the move, but Petitioner did not arrive until about 7:45 p.m. The Bazzis were not outside yet.

When the Bazzis arrived, Petitioner went to one of he vehicles to ask for more moving time. The driver agreed and said they were just there "for the red head girl in there who slapped my brother earlier today."

Petitioner testified that he, Griffin, and D.P. tried to defuse the situation when Landsfair and Jabr started their altercation, but the Bazzis said they had Jabr there specifically to fight Landsfair. Petitioner offered to have Landsfair apologize instead.

5

Petitioner claimed that as Landsfair approached, Jabr jumped out of the car wearing gloves and challenged her to a fight.

Petitioner and Ali ran toward the women. Griffin, D. P., and the other Bazzis followed. As Petitioner ran, he saw two men exit a black car, wearing all black. These men reached the women first. Petitioner claimed that he was breaking up the fight when Ali kicked Landsfair in the face. Petitioner pushed Ali away, but then Mohamed pushed Petitioner and pointed a gun in his face.

Mohamed punched Petitioner and fired a shot at the same time. Petitioner saw another man in the street fire two more shots and Petitioner heard three shots from behind him on the left, so he pretended to be shot and fell down. Petitioner identified the shooter in the street as one of the men that exited the black car when he was running toward Landsfair and Sarah.

Petitioner testified that when he spoke to Griffin after the incident Griffin said that D.P. shot back once when the shooting began. Petitioner further testified that he was angry that Griffin failed to testify regarding the fact that D.P. was a shooter. Petitioner testified that he was unarmed at the time of the shooting.

Following closing arguments, the trial court found Petitioner guilty of the offenses listed above.

Petitioner then filed a claim of appeal in the Michigan Court of Appeals. His appellate brief raised what now forms his second habeas claim, asserting that he was

6

denied the effective assistance of counsel. The Michigan Court of Appeals affirmed the convictions in an unpublished opinion, and it also sua sponte remanded the case for resentencing. *People v. Ivory*, No. 300861, 2011 WL 6279243 (Mich. Ct. App. Dec. 15, 2011).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims of ineffective assistance of counsel. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Ivory*, 815 N.W.2d 474 (Mich. 2012) (table).

Meanwhile, pursuant to the remand order, the trial court resentenced Petitioner, and it increased the maximum sentence of his assault with intent to murder conviction from 20 years-to-28 years and 2 months.

Petitioner filed a claim of appeal from the resentencing, asserting guideline scoring errors, vindictiveness, and that his original maximum sentence should be reinstated. The Court of Appeals issued an opinion reversing the increased sentence and reimposing Petitioner's original term. *People v. Ivory*, No. 310380, 2013 WL 5731732 (Mich. Ct. App. Oct. 22, 2013).

## II. Standard of Review

This habeas petition is reviewed under the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the state adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section

2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87 (internal quotation omitted).

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact and that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012).

## III. Discussion

### A. Failure of State Court to Hold Evidentiary Hearing

Petitioner first claims that the state courts erred in failing to remand his case to the trial court to hold an evidentiary hearing on his claim of ineffective assistance of trial counsel. He also seeks an evidentiary hearing in this Court.

As Respondent correctly notes, Petitioner did not request an evidentiary hearing in the state courts in the manner required by state law. He did not file a motion for new trial seeking a hearing on his ineffective assistance of trial counsel claim after his conviction, nor did he file a motion for remand in the Michigan Court of Appeals after his appeal of right was filed. Instead, the only request for a hearing appears in a single

9

sentence in his appellate brief, stating, "Appellant requests that this Honorable Court remand this case for the purpose of conducting a hearing pursuant to *People v. Ginther*, 390 Mich. 436 (1973), to determine whether the purported errors of counsel rose to the level of ineffective assistance of counsel. . . ." Appellant's Brief, p. 40. This request was not accompanied by any affidavit or other offer of proof as to what evidence or witnesses Petitioner proposed to present at a hearing.

Under state law, when a criminal appellant in Michigan wishes to raise a claim of ineffective assistance of counsel based on facts not contained in the existing record, he must request a so-called *Ginther* hearing. A request for such an evidentiary hearing must be accompanied by affidavits or other offer of proof as to the evidence the defendant wishes to present at the hearing. MICH. CT. RULE 7.211(C)(1).

The Michigan Court Rules require that a request for an evidentiary hearing be made in a separate motion. See MICH. CT. R. 7.211(C)(1). Petitioner's "alternative request in [his] appellate brief for a *Ginther* hearing is not a timely motion for remand as required by MCR 7.211(C)(1)." *People v. Fisher*, No. 262961, 2007 Mich. App. LEXIS 218, 2007 WL 283799, at *2 n.2 (Mich. Ct. App. Feb. 1, 2007) (per curiam); see also, *People v. Carter*, No. 232862, 2003 Mich. App. LEXIS 572, 2003 WL 887594, at *4 (Mich. Ct. App. Mar. 6, 2003) (per curiam) (*Ginther* hearing not properly requested when request was made as alternative relief request in body of brief and request was included in neither statement of appellate claims nor a properly

10

filed motion). Accordingly, under state law, the Michigan Court of Appeals did not err in failing to remand the case because no motion requesting a remand was ever filed.

But even if Petitioner's request for an evidentiary hearing as alternative relief in his appellate brief were sufficient to alert the state courts of the request, it was insufficient for another reason. Petitioner's request failed to comply with Rule 7.211(C)(1), requiring that a motion to remand show that "the development of a factual record is required for appellate consideration of the issue," and "be supported by affidavit or offer of proof regarding the facts to be established at the hearing." MICH. CT. R. 7.211(C)(1)(a). Petitioner's appellate brief was not accompanied by any offer of proof regarding the proposed testimony at an evidentiary hearing. See *People v. Murray*, No. 239287, 2003 Mich. App. LEXIS 2482, 2003 WL 22244699, at *4 n.4 (Mich. Ct. App. Sept. 30, 2003) (per curiam)("MCR 7.211(C)(1)(a)(ii) specifically requires that a motion to remand 'must be supported by affidavit or other proof regarding the facts to be established at a hearing.' A request to remand, presented as proposed relief in a party's appellate brief, must also meet this preliminary threshold before this Court will grant relief."); see also, *People v. Hawthorne*, No. 280289, 2009 Mich. App. LEXIS 414, 2009 WL 454927, at *2 n.1 (Mich. Ct. App. Feb. 24, 2009) (per curiam).

11

Petitioner's failure to make an offer of proof as required by Rule 7.211(C)(1)(a) also renders his attempt to develop the factual basis of his claim less than diligent under § 2254(e)(2) for purposes of obtaining a hearing in this Court. See *Mykolaitis v. Howes*, No. 2:10-CV-11903, 2011 U.S. Dist. LEXIS 91725, 2011 WL 3624949, at *47 (E.D. Mich. 2011); *Moore v. Berghuis*, No. 00-CV-73414, 2001 U.S. Dist. LEXIS 3025, 2001 WL 277047, at *7 (E.D. Mich. Feb. 28, 2001).

Petitioner asserts that he is nevertheless entitled to hearing in this Court under the authority of *Zimmerman v. Davis*, 683 F.Supp. 2d 523 (E.D. Mich. 2010). In *Zimmerman*, United States Magistrate Judge Komives recommended that the district court grant an evidentiary hearing on a habeas petitioner's ineffective assistance of counsel claim. In that case the Petitioner claimed that his trial counsel was ineffective for failing meet with him prior to trial and that his appellate counsel was also ineffective for failing to meet with him and for failing to properly move for an evidentiary hearing on his trial counsel claim during Petitioner's direct appeal. The Court found that Petitioner was diligent under § 2254(e)(2) because he requested a hearing at his earliest opportunity - his application for leave to appeal in the Michigan Supreme Court - when his appellate counsel was no longer representing him.

This case is distinguishable in at least two important respects. First, unlike *Zimmerman*, Petitioner never made any evidentiary proffer in the state courts as to what he proposed to present at an evidentiary hearing. Nor did he ever exhaust in state

court a claim that his appellate counsel was ineffective for failing to file a motion to remand or make an adequate offer of proof in support of his request for a hearing. Petitioner's application for leave to appeal in the Michigan Supreme Court, unlike the case in *Zimmerman*, simply did not make these arguments. Accordingly, Petitioner was not diligent under § 2254(e)(2) to develop his ineffective assistance of trial counsel claim in the state court. And furthermore, any claim of ineffective assistance of appellate counsel has not been exhausted as required by § 2254(b).

Secondly, and more devastating to Petitioner's request for a hearing in this Court, recent Supreme Court law decided after *Zimmerman* forecloses this Court from hold a hearing in the circumstances of this case. In *Cullen v. Pinholster*, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011), the Supreme Court held that where a habeas claim has been decided on its merits in state court, a federal court's review under 28 U.S.C. section 2254(d)(1)—whether the state court determination was contrary to or an unreasonable application of established federal—must be confined to the record that was before the state court. 131 S. Ct. at 1398. Here the Michigan Court of Appeals addressed and rejected Petitioner's ineffective assistance of trial counsel claims on the merits. Because the state courts conducted a merits review, section 2254(d) applies to his claims. The *Pinholster* Court specifically found that the District Court should not have held an evidentiary hearing regarding Pinholster's claims until after the Court determined that the petition survived review under Section 2254(d)(1). *Id.*, at 1398.

Accordingly, Petitioner is not entitled to a hearing in this Court on his ineffective assistance of counsel claim if the state court adjudication of his claims was reasonable. And, as will be discussed below, the state courts did reasonably decide Petitioner's claims against him on the merits. Therefore, Petitioner is not entitled to a hearing on his claims in this Court.

B. Ineffective Assistance of Trial Counsel

Petitioner asserts that his trial attorney provided ineffective assistance of counsel in an number of ways. First, he claims that his attorney failed to properly investigate and prepare for the testimony of his own witness - Griffin. Next, he claims that his attorney failed to investigate, locate, and secure the exculpatory trial testimony of eyewitnesses. Third, he claims that his attorney failed to obtain a copy of the police report involving the earlier altercation at the rental house. Fourth, Petitioner claims that the prosecutor agreed to drop the charges against him if he passed a polygraph test, but his counsel ineffectively advised him against taking it. Finally, Petitioner claims that his counsel was ineffective for waiving his right to a jury trial. None of these claims has merit.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by

14

the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

1. Preparing for Griffin's Testimony

Petitioner claims that his attorney did not interview Griffin and was unprepared for his testimony that he claims devastated his defense. First, as noted by the Michigan Court of Appeals, there is simply no evidence that counsel did not interview Griffin prior to trial. A fair reading of Griffin's direct examination testimony suggests moments of consternation by defense counsel during Griffin's testimony. But it does not follow that defense counsel was not prepared for Griffin's testimony or did not interview him. It is not unusual for a witness to add or subtract facts from their story when they are on the witness stand.

More to the point, however, Griffin was not the "complete disaster," Petitioner claims he was. Griffin's testimony appears at ECF No. 10-8, pp. 98-141. Consistent

15

with the defense theory, Griffin testified about the earlier altercation where a door was kicked by Ali Bazzi, and McCoy's daughter was knocked down. Id., at 102. He characterized Petitioner's behavior just prior to the shooting in a positive light, testifying that he approached the vehicles to try to "clear things up," and have "Angie come out and apologize." Id., 110-112. In describing the subsequent fight, Griffin testified that he first saw one of the Bazzis brandishing a gun, point it at Petitioner, and hit him on the head with it. Id., 116. Griffin thought Petitioner had been shot. Id., 116. He testified that he did not see any of the shooters. Id., 116. Griffin testified that Petitioner did not have a gun, nor did he see D.P. with a gun, and he heard the shots coming from the direction of the Bazzis. Id., 117.

Therefore, the thrust of Griffin's testimony was that Petitioner was an unarmed victim of an attack precipitated by the Bazzis. The only difference of substance between Petitioner's and Griffin's testimony is that Petitioner testified that Griffin told him that D.P. fired shots. Meanwhile, Petitioner did not even directly accuse D.P. of being the shooter - he was simply hoping that Griffin would make that claim. Instead, Griffin's testimony seemed to suggest that the two victims were hit by "friendly" fire from other Bazzis. Griffin's testimony therefore still served to put Petitioner in the role of an unarmed peace-maker, who was assaulted by one of the Bazzis. It was a description of events completely consistent with Petitioner's account of the incident in all material respects. Accordingly, even if it is true that Petitioner's trial counsel did

16

not adequately interview Griffin, the Court finds that Petitioner did not suffer any *Strickland* prejudice. The claim was reasonably decided against Petitioner by the Michigan Court of Appeals.

2. Failure to Call Eye-Witnesses

The failure to call witnesses can, of course, constitute ineffective assistance of counsel. *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel, however, only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004).

Petitioner's claim that his counsel failed to call favorable eyewitnesses was reasonably rejected by the state courts because Petitioner completely failed in state court, and even in this Court, to identified who the uncalled eyewitnesses are. He did not provide names of any uncalled witnesses let alone statements to the state courts, and he did not even make an offer of proof to this Court in his petition.

It was not until Petitioner filed his reply brief in this action to Respondent's answer, that he listed the names of James Meyers, Teresa McCoy, and "others," as the uncalled witnesses. He attaches a  statement made by Meyers to the Hillsdale Police Department dated 11/15/09. In the statement Meyers states that he heard that D.P. and Petitioner had guns at the scene, but that it was D.P. who did the shooting.

17

Obviously, defense counsel was not ineffective for failing to call Meyers in the defense case. Meyers, unlike Griffin, believed that Petitioner was armed at the time of the shooting. This information would have also contradicted Petitioner's own testimony that he was unarmed. Moreover, Meyers does not state that he had personal knowledge of these facts, but that he heard Petitioner and D.P. were armed. Accordingly, it is likely his proffered testimony would have been excluded as hearsay. Accordingly, Petitioner's trial counsel was not ineffective for failing to call Meyers as a witness for the defense, even in light of Petitioner's eleventh-hour proffer of his statement.

With respect to McCoy, Petitioner merely names her as an eyewitness. He does not provide any proffer whatsoever as to what she would say regarding the shooting. He has thus completely failed to demonstrate that his counsel was ineffective for failing to call her or that he was prejudiced by her failure to testify at trial.

3. Failure to Obtain Police Report

Petitioner claims that his trial attorney failed to obtain the police report about the prior incident at the rental house. He alleges that the report likely contained information that would have benefitted the defense. But again, Petitioner has not proffered any evidence regarding such a police report, or that his counsel did not have it.

In any event, there was adequate testimony about the prior incident presented at trial to establish the points Petitioner hoped the police report would show. The evidence presented at trial indicated that Kassem did not initiate legal eviction proceedings. There was testimony that Ali kicked open a door and knocked over a child. There was testimony that Ali was slapped by Landsfair, creating a motive for revenge. There was testimony that the Bazzis indicated that they were there later that evening so Jabr could fight Landsfair as the result of the earlier confrontation. It is difficult to imagine that anything in the police report, if it exists, would have furthered the defense claim that the Bazzis precipitated the confrontation.

More importantly, when the trial court made its findings of fact after the bench trial, it acknowledged that Jabr knew about the slapping incident and "probably showed up with an attitude and would have had enough of a spark to get this ball rolling." T 8/12, p. 54. That is, the trial court essentially accepted the fact that it was the prior incident that set the stage for the Bazzis to confront the tenants and ignite the confrontation. Accordingly, even without the police report, Petitioner was able to benefit as much as possible from the facts surrounding the earlier incident.

The Court notes that again, in an eleventh-hour effort, Petitioner has attached an affidavit from Lawanna Dowtin to his reply to Respondent's answer. Dowtin claims Petitioner's first trial attorney told her to try to get the report herself, and the police would not give it to her. Again, this allegation was not made to the state courts,

and it was not even presented in Petitioner's initial habeas application . Furthermore, even if the Court accepts the allegation as true, it does not change the fact that Petitioner's defense was not prejudiced. As indicated, the trial court accepted Petitioner's narrative regarding the earlier incident, which placed initial blame on the Bazzis. The claim is therefore without merit.

    4. Failure to Advise Petitioner to take Polygraph Test

    Petitioner claims that he was promised by the prosecution that charges against him would be dropped if he took and passed a polygraph test. Again, there is no evidence of such a deal, nor is there any evidence that even if such a deal had been offered, that defense counsel advised against one.

    But even assuming that such a deal had been offered and counsel advised against it, Petitioner's claim would still be without merit. It would not have been unreasonable to advise Petitioner against participating in a polygraph interview because if he made any inculpatory statements during the test, they would have been admissible at trial. *Wyrick v. Fields*, 459 U.S. 42, 48 (1992). Advice to not make a statement to police is exactly the type of tactical decision that cannot be second-guessed under the *Strickland* standard. This claim is therefore also without merit.

    5. Advising Petitioner to Waive Right to Jury Trial

    Petitioner claims that his counsel was ineffective for advising him to waive his right to a jury trial and proceed with a bench trial instead.

The record shows that Petitioner signed the jury waiver form. T 7/12, pp. 4-5. He denied on the record that he was threatened or coerced into waiving his right to a jury trial. Id., p. 5. The record also indicates that counsel had extensive discussions about the issue with Petitioner. Id., p. 3.

"A defense counsel's decision to waive a defendant's right to jury and proceed with a non-jury trial is a classic example of strategic trial judgment for which *Strickland* requires highly deferential judicial scrutiny," particularly on habeas review. *Walendzinski v. Renico*, 354 F. Supp. 2d 752, 758 (E.D. Mich. 2005) (quotation marks omitted). A defense counsel's advice to a client to waive his right to a jury "constitutes a conscious, tactical choice between two viable alternatives." *Id*. In the present case, Petitioner's counsel could have reasonably believed that it was better for Petitioner to have a bench trial than a jury trial, and Petitioner has failed to offer any evidence otherwise. *Id*.; see also *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003) ("[The petitioner's] attorney could have reasonably believed that it was better strategy for Willis to be tried by the judge rather than a jury, and [the petitioner] has failed to offer any evidence to the contrary.").

Moreover, Petitioner has failed to show that he was prejudiced by counsel's recommendation to proceed with a bench trial, because he has presented no evidence that the trial judge was biased against him in any way. *Willis*, 351 F.3d at 746. Finally, trial counsel's advice to Petitioner to waive a jury trial did not prejudice Petitioner,

where it was unlikely that a jury would have acquitted Petitioner after hearing the same evidence that the trial court judge heard in this case. *Walendzinski*, 354 F. Supp. 2d at 758. Given the doubly-deferential standard of ineffective assistance of counsel claims reviewed under section 2254, Petitioner has failed to demonstrate entitlement to relief with respect to this claim.

## IV. Conclusion

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. ' 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. ' 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when

it enters a final order adverse to the applicant." Rules Governing ' 2254 Cases, Rule 11(a), 28 U.S.C. foll.' 2254.

Petitioner has demonstrated a substantial showing of the denial of a constitutional right with respect to his claims. Though he does not directly claim that his appellate counsel was ineffective for failing to properly request an evidentiary hearing in the state courts, a reasonable jurists might debate whether appellate counsel might have obtained sufficient evidentiary proffers had he sought them prior to filing Petitioner's appellate brief. Had this occurred, there remains a possibility that Petitioner's claims could have been supported at least enough to warrant a hearing. Accordingly, a certificate of appealability will issue as to both of Petitioner's claims. The Court will also grant Petitioner permission to proceed on appeal in forma pauperis. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002); 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).

V.

Accordingly, it is ORDERED that the petition for writ of habeas corpus is DENIED.

It is further ORDERED that a certificate of appealability is GRANTED.

It is further ORDERED that Petitioner may proceed in forma pauperis on appeal.

s/Arthur J. Tarnow
Arthur J. Tarnow

Dated: October 5, 2015                     Senior United States District Judge